UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-02271-BAH-RMM |
| | ) |
| MARTIN O'MALLEY,[2] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Samuel C. seeks reversal and remand of the Commissioner of Social Security's decision to deny his claim for disability insurance and supplemental security income benefits. District Judge Beryl A. Howell referred the matter to the undersigned for full case management. *See* Aug. 8, 2022 Order. Having considered the Administrative Record,[3] the parties' submissions,[4] and the relevant law, the undersigned recommends that this Court DENY

---

[1] Plaintiff's name has been partially redacted in keeping with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Mem. from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt., to Chief Judges of the U.S. Cts. Of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf.

[2] Martin O'Malley became Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this case.

[3] Page citations to the Administrative Record, ECF No. 11 ("AR"), refer to the running pagination at the lower right margin.

[4] The relevant briefs are Plaintiff's Mem. Supp. Mot. for J. Reversal ("Pl. Mem."), ECF No. 17-1; Defendant's Opp'n to Pl. Mot. and Mem. Supp. Mot. for J. Affirmance ("Def. Mem."), ECF No. 18 (also filed at ECF No. 19); and Plaintiff's Opp'n to Def. Mot. and Reply in Supp. Pl. Mot. ("Pl. Reply"), ECF No. 20. All page citations refer to the document's original pagination, except those preceded by an asterisk, which refer to the ECF pagination.

Plaintiff's Motion for Judgment of Reversal, ECF No. 17, and GRANT Defendant's Motion for Judgment of Affirmance, ECF No. 18.

## BACKGROUND

Mr. C. filed applications for disability insurance and supplemental social security income benefits in August 2019. *See* AR 325–341. He alleged disability beginning September 1, 2018, due to severe mental impairments including affective disorders and trauma- and stressor-related disorders. *See* AR 325. Mr. C. was 25 years old at the time of his application. *See* AR 25. Mr. C does not have a permanent home address and has a limited work history. *See* AR 47–51.

Mr. C.'s claims were denied on November 1, 2019 and, upon reconsideration, on February 7, 2020. *See* AR 15. Mr. C. filed a timely request for hearing on May 24, 2020. *Id.* A telephonic hearing was ultimately held before an Administrative Law Judge ("ALJ") on August 4, 2021. *Id.* On November 21, 2021, the ALJ denied Mr. C.'s claims. *See* AR 26. The Appeals Council denied Mr. C.'s request for review on May 26, 2022. *See* AR 1.

Mr. C. now asks this Court to reverse the ALJ's decision, which constitutes the Commissioner's final decision, and remand pursuant to 42 U.S.C. § 405(g) for further proceedings. *See* Compl. at 16; Pl. Mem. at 1. Mr. C. seeks reversal and remand on a narrow procedural issue: whether the ALJ reasonably declined to consider medical opinions submitted by Mr. C. after the hearing in accordance with the Five-Day Rule. *See generally* Pl. Mem.; 20 C.F.R. §§ 404.935(a), 416.1435(a).

I.  **Statutory and Regulatory Framework**

To qualify for benefits under the Social Security Act, a claimant must demonstrate a disability that renders him unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a), 423(d)(1)(A),

1382(a)(1), 1382c(a)(3)(A).  It is the claimant's responsibility to prove that he is disabled by informing the Commissioner about or submitting all evidence known to him that relates to whether he is disabled.  20 C.F.R. § 404.1512(a).  "This duty is ongoing and requires [him] to disclose any additional related evidence about which [he] become[s] aware."  *Id.*

The Commissioner uses a five-step process to determine whether a claimant is disabled under the Act.  *Id.* §§ 404.1520, 416.920; *see Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (describing each step).  At Step One, the claimant must show he is not engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At Step Two, he must show he has a "severe medically determinable physical or mental impairment" or combination of impairments.  *Id*.  At Step Three, the Commissioner determines whether the claimant's impairment or impairments meet or equal an entry in the Commissioner's Listings maintained at 20 C.F.R. part 404, subpart P, appendix 1.  If the claimant's impairment is listed, or if his impairments together "equal" a listing, the Commissioner will conclude that the individual is disabled and end the inquiry.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4); *see also Petty v. Colvin*, 204 F. Supp. 3d 196, 200 (D.D.C. 2016).

A claimant is not necessarily precluded from receiving benefits if his impairments do not meet or equal an entry in the Listings.  The Commissioner may next assess the claimant's residual functional capacity, or "RFC."  20 C.F.R. §§ 404.1520(a)(4), (e); 416.920(a)(4), (e).  Residual functional capacity measures what an individual "can do in a work setting" despite the person's physical and mental limitations.  *Id.* § 404.1545(a)(1).  The RFC is then used to determine, at Step Four, whether the claimant's impairments prevent him from performing "past relevant work," and at Step Five, whether the claimant can perform other work that exists in the national economy consistent with the claimant's age, education, and work experience.  *Id.* §§

3

404.1520(a)(4), 416.920(a)(4), *see also Butler*, 353 F.3d at 997.  If an individual's claim fails at either of these steps, the Commissioner will conclude that the individual is not disabled and deny the claimant's benefits request.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

If a claimant proceeds to a hearing before an ALJ, the Five-Day Rule requires that "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform [him] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." *Id*. §§ 404.935(a), 416.1435(a).  If the claimant does not submit the evidence or inform the ALJ of its existence before the deadline and no decision has been issued, the ALJ "may decline to consider or obtain the evidence," unless: (1) an action of the Commissioner misled the claimant; (2) the claimant had a physical or mental limitation that prevented them from meeting the deadline; or (3) "some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him] from informing [the ALJ] about or submitting the evidence earlier." *Id.* §§ 404.935(a)-(b), 416.1435(a)-(b).  This last category includes, but is not limited to, situations where the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." *Id.* §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv).

## II.     Relevant Record Evidence

Mr. C. claims disability due to severe mental impairments for which he began receiving care at the D.C. Department of Behavioral Health in August 2018.  *See* AR 608.  In September 2018, Mr. C. was referred to Community Connections, Inc. for resources and support regarding housing and employment as well as mental health medication management and anger management.  *See* AR 476.  The record indicates that Mr. C. received care there through April 2021.  *See* AR 732.  Mr. C. periodically saw Doctor Adam Lowy and Registered Nurse Jennifer

4

Landrette for medication management. *See, e.g.*, AR 482, 533, 661, 679, 705, 717, 729, 730. In July 2019, Mr. C. briefly entered a program for substance abuse and employment counseling at Blair Shelter through Coalition for the Homeless. *See* AR 920–21. Mr. C. also completed routine drug testing and anger management sessions in 2019 through the Court Services and Offender Supervision Agency ("CSOSA") for the District of Columbia. *See* AR 485, 923.

### III. Procedural History

Mr. C. was originally scheduled for a hearing before an Administrative Law Judge ("ALJ") on November 6, 2020, which was postponed for Mr. C. to obtain representation. *See* AR 15. Mr. C. appeared for a hearing on February 12, 2021 without representation, and the ALJ again postponed the hearing to allow Mr. C. to review the record and obtain representation. *Id.* Mr. C. obtained a non-attorney representative in April 2021. *See* AR 279–82. Mr. C's representative appeared at the August 4, 2021 hearing and certified that he examined all of the exhibits admitted into the record. *See* AR 41.

During the hearing, Mr. C. testified about substance abuse treatment received from the Court Services and Offender Supervision Agency ("CSOSA") for the District of Columbia and Blair Shelter.[5] *See* AR 75–78. The ALJ noted that evidence supporting Mr. C.'s testimony was not in the record. *See* AR 78–79. The ALJ agreed to leave the record open for 30 days after the hearing to allow Mr. C.'s representative to file "the drug evaluation performed by [C]SOSA, Blair [Shelter], and the District of Columbia Court System." AR 80. Mr. C.'s representative sent the ALJ a letter on September 7, 2021—thirty-three days after the hearing—requesting another 10-day extension to obtain the records from CSOSA and Blair Shelter. *See* AR 461. Mr.

---

[5] The undersigned assumes that references to "Blair House" in the transcript are actually to Blair Shelter. *See* Court Transcript Index at 4, ECF No. 11-1 (identifying exhibit 10F as evidence of record from "Blair Shelter").

C's representative noted that they spoke to CSOSA that same day and were told the records would be provided on September 10. *Id.* Despite the delay, the ALJ admitted the documents into the record. *See* AR 15.

Mr. C.'s representative also submitted "two medical source opinions" on September 7, 2021.[6] AR 15. Both medical source opinions are dated August 24, 2021 and signed by Jack Hurrell, Psych N.P., whom Mr. C. describes as a "practitioner from Community [Connections]." *See* Pl. Mem. at 4; Pl. Ex. A at *3, *7, ECF No. 17-2. Both opinions are on a template "provided to the medical source by Mathis & Mathis," Mr. C.'s representative, "as a blank form." Pl. Ex. A at *1, *4; *see* AR 281 (identifying Mr. C.'s representative as an affiliate of Mathis & Mathis). The first opinion, "Medical Assessment of Ability to Do Work-Related Activities (Mental)," describes Mr. C. as having marked limitations in a number of occupational adjustment areas and states that Mr. C. would be absent from work more than three times a month. *See* Pl. Ex. A. at *1–3. The second opinion, "Medical Assessment of Mental Status," diagnoses Mr. C. with bipolar disorder with psychotic features and PTSD. *Id.* at *4–7. This opinion notes no difficulties in daily living or socialization, but deficiencies in concentration due to racing thoughts and "repeated episodes of deterioration . . . in work or work-like settings which cause the patient to withdraw . . . or experience exacerbation." *Id.* Mr. Hurrell notes that he met with Mr. C. only on August 24, 2021 but developed his opinion by "referencing notes of colleague who treated patient from 12/9/19 – 7/7/21." *Id.* at *1. The ALJ declined to admit these opinions into the record "because the representative failed to notify the [ALJ] about the evidence five days

---

[6] Mr. C.'s brief states that he submitted the medical opinions on September 12 and September 7. *Compare* Pl. Mem. at 6 *with* Pl. Mem. at 8, 10. The undersigned will assume that Mr. C. submitted the opinions on September 7 in accordance with the ALJ's statement. *See* AR 15.

before the hearing," and "[t]he good cause exceptions to the Five-Day rule do not apply." AR 15 (citing 20 C.F.R. §§ 404.935(a), 416.1435(a)).

IV. **The ALJ's Decision**

The ALJ issued an unfavorable determination and denied Mr. C. benefits under the Social Security Act. At Step One, the ALJ determined that Mr. C. had not engaged in substantial gainful activity since his onset date. *See* AR 18. At Step Two, the ALJ determined that Mr. C. has several severe impairments: substance abuse disorder, major depressive disorder, bipolar disorder, depression, post-traumatic stress disorder, and anxiety disorder. *Id.* At Step Three, the ALJ determined that Mr. C.'s impairments did not singly or in combination meet or equal one of the listings in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 18–20. The ALJ calculated that Mr. C.'s RFC permitted a full range of work at all exertional levels, but limited to "simple, routine, repetitive tasks in a low-stress work environment with 'low stress' defined as no strict production quotas and no assembly line pace work," and with only occasional interaction with others. *Id.* at 20–25. Mr. C. had no past relevant work history to address at Step Four. *Id.* at 25. At Step Five, the ALJ determined that Mr. C. would be able to make a successful adjustment to work in various occupations that exist in significant numbers in the national economy. *Id.* at 26. Accordingly, the ALJ determined that Mr. C. is not disabled under the Social Security Act. *Id.* at 27.

**LEGAL STANDARD**

Courts will uphold the Commissioner's decision to deny an individual disability benefits if the decision "is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler*, 353 F.3d at 999 (citing 42 U.S.C. § 405(g)). Courts have applied a slightly different framework to review the Commissioner's resolution of issues concerning

7

timeliness or purely procedural issues. The Supreme Court has determined that when reviewing the Commissioner's decision to dismiss an appeal as untimely, the abuse-of-discretion standard applies to the "overall conclusion," and substantial-evidence review applies to findings of fact. *Smith v. Berryhill*, 139 S. Ct. 1765, 1779 n.19 (2019).

The abuse-of-discretion standard is especially apt for review of an ALJ's ultimate decision to exclude untimely evidence under the Five-Day rule where no good cause exception applies. *See Stout v. Kijakazi*, No. 20-cv-36013, 2022 WL 445521, at *1 (9th Cir. Feb. 14, 2022) (affirming application of abuse-of-discretion standard to ALJ's refusal to consider evidence that was submitted in violation of Section 404.935); *Haight v. Comm'r of Soc. Sec.*, No. 22-cv-01364, 2023 WL 3467042, at *1 (6th Cir. Jan. 18, 2023) (same). "An abuse of discretion exists when the ALJ applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Haight*, 2023 WL 3467042, at *1. The ALJ's assessment of factual issues such as whether the evidence was submitted late or whether the elements of an exception exist are findings of fact reviewed under the substantial evidence standard. *See Albert v. Comm'r of Soc. Sec.*, No. 2:18-CV-00907, 2019 WL 2912091, at *4 (S.D. Ohio July 8, 2019) (determining there was no evidence to refute ALJ's finding that evidence was submitted late). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Butler*, 353 F.3d at 999 (substantial evidence is "more than a scintilla, but . . . less than a preponderance").

## DISCUSSION

Mr. C. challenges the ALJ's refusal to consider the medical opinions of Mr. Hurrell. He alleges that the ALJ erroneously omitted the opinions, which if considered "could have" changed the ALJ's ultimate determination. Pl. Mem. at 6. The Commissioner argues that the ALJ was

justified in his rejection of the opinions as Mr. C.'s representative did not comply with the Five-Day Rule and failed to show that any of the enumerated exceptions apply. *See* Def. Mem. at 1.

I. **The ALJ's Finding that Mr. C. Failed to Inform the ALJ About the Opinions in a Timely Manner Applies the Correct Legal Standard and is Supported by Substantial Evidence.**

The regulations are clear that claimants must "inform [the ALJ] about or submit written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.935(a), 416.1435(a). As the hearing occurred August 4, 2021, that deadline lapsed July 28, 2021. It is undisputed that Mr. C failed to submit the evidence by the deadline, or even within the additional 30-day period during which the record was held open. Instead, the parties dispute whether the ALJ erred in finding that Mr. C. failed to notify him about the opinions five business days before the hearing. *See* AR 15. Mr. C. argues that the ALJ was informed about the medical opinions in advance because the evidence submitted pre-hearing showed that "Mr. [C.] received treatment at Community [Connections]," so "the ALJ was already on notice that there *could* be outstanding records from that facility." Pl. Mem. at 8 (emphasis added). The Commissioner counters that Mr. C.'s argument is contrary to the Five-Day rule and that he failed to properly inform the ALJ of the outstanding evidence. *See* Def. Mem. at 11–12.

First, acceptable notice under the Five-Day rule involves "information specific enough to identify the [outstanding] evidence (source, location, and dates of treatment) and show that the evidence relates to the individual's" claim. SSR 17-4p, 2017 WL 4736894, at *3 (S.S.A. Oct. 4, 2017). Substantial evidence supports the ALJ's factual finding that Mr. C. failed to provide any information about the outstanding medical opinions or how they relate to Mr. C.'s claim at any point. *See* AR 15 (stating that Mr. C. did not provide notice). As the Commissioner notes, Mr. C. failed to inform the ALJ of this anticipated evidence despite having several opportunities to

9

do so. *See* Def. Mem. at 10–11 (noting that Mr. C. did not inform ALJ of additional records during hearing or before submitting them). Mr. C. could have informed the ALJ of outstanding evidence from Community Connections prior to the hearing, when the ALJ ordered him to obtain evidence from CSOSA and Blair Shelter at the hearing, when he requested the opinions from Community Connections,[7] between receiving and submitting the opinions, and even in his September 7 letter to the ALJ, *see* AR 461. Yet Mr. C. does not assert any facts or point to any evidence that contradicts the ALJ's finding that Mr. C. failed to specifically inform or notify him about the opinions.

Second, the fact that the record shows that Mr. C. received care at Community Connections up to April 2021 does not support Mr. C.'s suggestion that the ALJ expected to receive evidence of later treatment, let alone a medical opinion. Generally, "past treatment by a provider is no guarantee of future treatment by the same provider." *Albert*, 2019 WL 291209, at *4. To that end, a "plaintiff cannot be deemed to have notified the ALJ of later treatment records from a provider simply by producing earlier records from the same provider." *Id.* Here, one could not reasonably expect evidence of later treatment at Community Connections to come post-hearing because the record does not indicate that Mr. C. was continuing to receive care up until the hearing. The record only contains treatment records up to April 2021, *see* AR 732, despite the fact Mr. C. had an opportunity to submit evidence until the end of July 2021. If Mr. C. had been treated at Community Connections after April 2021, one would reasonably expect his representative to submit those records in the course of preparing for the hearing.

---

[7] As noted above, the opinions are on templates provided by Mr. C.'s representative at Mathis & Mathis. *See* Pl. Ex. A at *1, *4; *see* AR 281 (identifying Mr. C.'s representative as an affiliate of Mathis & Mathis). The opinions could not have been generated without Mr. C. contacting Community Connections in advance, thus giving Mr. C. an opportunity to notify the ALJ of possible incoming evidence.

Finally, accepting Mr. C.'s argument would imply that the ALJ has a duty to perpetually hold the record open for records from a claimant's current treating source. As the Commissioner argues, requiring the ALJ to keep the record open is not only impracticable, but contrary to the Five-Day rule as it would only increase the "workload challenges" that the Five-Day rule is intended to ameliorate. *See* SSR 17-4p, 2017 WL 4736894, at *2 (stating that the SSA "cannot afford to continue postponing hearing proceedings because the record is not complete at the time of the hearing"); *see* Def. Mem. at 11 (citing *Cherrell J. C. B. v. Saul*, No. 18-cv-04323, 2020 WL 1460173, at *13 (N.D. Ga. Mar. 20, 2020) (stating that the Five-Day rule "would have little meaning if ALJs were required to seek out and admit evidence that claimants were tardy in providing")).

For the foregoing reasons, the undersigned recommends that the Court affirm the ALJ's conclusion that Mr. C. failed to timely inform the ALJ about the outstanding medical opinions under the Five-Day rule.

**II.     The ALJ Applied the Correct Legal Standard and Relied on Substantial Evidence to Conclude that Mr. C. Does Not Meet Any Exception to the Five-Day Rule.**

An ALJ is obligated to admit and consider evidence that he was not timely informed about if he had not yet issued a decision and the claimant establishes that one of three good-cause exceptions to the Five-Day rule applies. *See* 20 C.F.R. §§ 404.935(b), 416.1435(b). Here, the ALJ concluded that none of the exceptions apply. *See* AR 15. Mr. C. argues that the third exception, "some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him] from informing [the ALJ] about or submitting the evidence earlier," applies. *See* Pl. Mem. at 9; 20 C.F.R. §§ 404.935(b)(3), 416.1435(b)(3). Mr. C. suggests that his representative "was diligent in obtaining evidence." Pl. Mem. at 10; 20 C.F.R. §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv) (specifying that third exception applies where claimant

11

"actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing").

Mr. C. first asserts that the third exception applies because the "document was not in existence until after the hearing took place." Pl. Mem. at 9. It is true that the document postdates the hearing, and the ALJ did not find otherwise. However, if "the mere fact that the opinion was created post-hearing" suffices to meet the exception, the exception would swallow the rule, because "every applicant for benefits [could] submit evidence created after the date of the hearing . . . and thereby obtain reopening of the application." *Brigham v. Colvin*, No. 1:15-cv-00433, 2016 WL 4994990, at *2 (D. Me. Sept. 19, 2016); *see also Hight v. Comm'r of Soc. Sec.*, No. 2:18-cv-11817, 2019 WL 4866746, at *12 (E.D. Mich. June 25, 2019), *report and recommendation adopted*, 2019 WL 3940854 (E.D. Mich. Aug. 21, 2019). "The practical administrative difficulties that would be caused by such a rule are obvious," and contrary to the intent of the Five-Day rule. *Brigham*, 2016 WL 4994990, at *2.

Mr. C. also suggests that the third exception applies because the evidence "could not be produced until August 24." Pl. Mem. at 9. But Mr. C. fails to identify an "unusual, unexpected, or unavoidable circumstance beyond [his] control" that made it impossible to produce the evidence earlier or at least inform the ALJ that it was forthcoming. 20 C.F.R. §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv). He does not assert that Mr. Hurrell, or any other medical source that treated him at Community Connections, was unable to see him and issue their opinion earlier than August 24. Notably, Mr. Hurrell's opinion was based on the notes of a colleague who last saw Mr. C. at Community Cares on July 7, 2021, about one month before the hearing. *See* Pl. Ex. A. at 1. Mr. C. provides no explanation why that colleague or any other medical professional at Community Cares did not or could not provide an opinion based upon

12

the same notes between July 7 and August 24.  Further, Mr. C. fails to address the biggest gap in his argument: why his representative did not, or could not, request a medical opinion from Community Cares prior to the hearing and timely inform the ALJ that a medical opinion from a medical provider at Community Cares was forthcoming.  As a number of courts have held, this exception cannot be met where the claimant fails to "explain, let alone supply evidence corroborating, when he became aware of the missing records, why he only then became aware of them, how soon afterward he requested them, and what efforts he thereafter made to secure them in a timely fashion."  *Freeman v. Colvin*, No. 2:14-cv-00412, 2015 WL 4041733, at *3 (D. Me. July 1, 2015); *see Hight*, 2019 WL 4866746, at *12 (exception not shown for medical opinion acquired three months after plaintiff submitted records from provider where plaintiff did not assert that provider was unavailable or that he made earlier efforts to get opinion).

Finally, Mr. C. suggests that the exception applies because his representative "actively and diligently sought" the opinions at issue.  20 C.F.R. §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv); *see* Pl. Mem. at 10.  All Mr. C. points to is the simple fact that he obtained representation in April 26, "less than four months prior to the administrative hearing," and his representative submitted the opinions on September 7.  Pl. Mem. at 9.  As the Commissioner argues, this does not substantiate the assertion that Mr. C.'s representative was in any way diligently seeking the opinions for it says nothing about when or whether Mr. C.'s representative requested the opinions before August 24 and what efforts were made to obtain them at all.  *See* Def. Mem. at 14.  Mr. C. later asserts that the fact that his representative submitted the opinions within two weeks of receiving them shows diligence.  *See* Pl. Reply at 6.  However, submitting evidence in hand has no bearing on whether one diligently *sought* it in the first place.

13

In his Reply, Mr. C. argues that the ALJ's conclusion that none of the exceptions were met is insufficient for lack of explanation. *See* Reply at 4–5 (citing *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006)). Several other district courts have denied this argument, reasoning that because it is the claimant's obligation to demonstrate that an exception applies, the ALJ cannot err in failing to address the exceptions where none are raised by the claimant. *See April L. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01803, 2019 WL 310122, at *4 (D. Or. Jan. 22, 2019) ("A reasonable reading of § 416.1435(b) indicates that the burden is on the claimant to explain why an exception to the general evidence submission rules should apply. . . . Accordingly, the ALJ does not err by failing to follow up about the applicability of a potential exception."); *see also Hight*, 2019 WL 4866746, at *14; *Midkiff v. Berryhill*, No. 2:18-cv-00338, 2019 WL 1258845, at *2 (S.D.W.V. March 19, 2019). Mr. C. does not argue, nor does the record show, that he provided any explanation or argument in support of admitting the opinions to the ALJ. Thus the ALJ's brief analysis is adequate.

In all, Mr. C. fails to assert any facts or point to any evidence that contradicts the ALJ's finding that "the good cause exceptions to the Five-Day rule do not apply." AR 15. As there was no evidence that the ALJ overlooked, nor any evidence indicating that the exception applied, the ALJ's ruling cannot be said to be contrary to substantial evidence. Nor did the ALJ misapply the regulations or otherwise abuse his discretion when concluding that no exception applied. Accordingly, the undersigned recommends that the Court affirm the ALJ's finding on this point.

### III. The ALJ Did Not Abuse His Discretion in Declining to Admit the Opinions.

Finally, Mr. C. suggests that the ALJ abused his discretion by excluding the opinions because "the ALJ was leaving the record open for evidence to be submitted" and the exclusion of the opinions, but not other late evidence, was "strategic" to "exclude evidence that could have ultimately impacted the outcome." Pl. Mem. at 10. Mr. C. glosses over the fact that the record was left open for specific evidence that the ALJ requested: "the drug evaluation performed by [C]SOSA, Blair [Shelter], and the District of Columbia Court System." AR 80. Mr. C. does not argue that the opinions fall within this request, nor does he challenge the ALJ's authority to open the record for limited purposes. "It is not an abuse of discretion for the ALJ to find good cause to admit evidence that was submitted consistent with SSA regulations and similarly refuse to consider evidence that was submitted in violation of those regulations." *Stout*, 2022 WL 445521, at *1. Thus the undersigned finds no merit to this argument and recommends that the Court affirm the ALJ's decision to decline to admit the medical opinions of Mr. Hurrell.

### RECOMMENDATION

For these reasons, the undersigned recommends that the Court **DENY** Plaintiff's Motion for Judgment of Reversal and **GRANT** Defendant's Motion for Judgment of Affirmance on these same points.

### REVIEW BY THE DISTRICT COURT

The parties are advised that under the provisions of Local Rule 72.3(b), any party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within 14 days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and

recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).


Date: March 29, 2024

                                          ROBIN M. MERIWEATHER
                                          UNITED STATES MAGISTRATE JUDGE